IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LISA C.,

    **Plaintiff,**

vs.                                                               CIVIL ACTION NO. 2:24-CV-00093

MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered February 28, 2024 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for reversal and entry of an award for benefits or remand for further proceedings (ECF No. 5), **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 6);

**AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on November 18, 2020 alleging disability beginning March 12, 2020 due to diabetes, tachycardia, neuropathy, insomnia, goiter, enlarged thyroid, thyroid nodules, bladder and bowel incontinence, joint and muscle pain, obesity, anxiety, depression, pain in both feet, lower and upper back pain, neck pain, high blood pressure, and fatigue. (Tr. at 17, 186-189, 202) Her claim was initially denied on July 14, 2021 and upon reconsideration on May 25, 2022 (Tr. at 17, 89-93, 105-109). Thereafter, the Plaintiff filed a written request for hearing on July 14, 2022 (Tr. at 110-111).

An administrative hearing was held on July 20, 2023 before the Honorable Christina Hajjar, Administrative Law Judge ("ALJ") (Tr. at 35-61). On September 13, 2023, the ALJ entered an unfavorable decision (Tr. at 14-34). On January 8, 2024, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Defendant (hereinafter referred to as "the Commissioner"). (Tr. at 1-6)

On February 27, 2024, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed her Brief in Support of Complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the Plaintiff filed her Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 54 years old as of the alleged onset date, and during the underlying proceedings transitioned from a "person closely approaching advanced age" to a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d), (e). (Tr. at 63) She has a high school education, and last worked on March 12, 2020 performing primarily secretarial work. (Tr. at 203, 49, 43-48).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant

3

establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the

Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
   (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
   (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision

5

must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through June 30, 2022. (Tr. at 19, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity during the period from her alleged onset date of March 12, 2020 through her date last insured (DLI) of June 30, 2022. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments through her DLI: osteoarthritis; chronic cervical and lumbar spine strains with radiculopathy; obstructive sleep apnea; type 2 diabetes mellitus (hypoglycemia and goiter) with retinopathy and peripheral neuropathy; and obesity. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that through her DLI, the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21, Finding No. 4)

The ALJ then found that through her DLI, the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

> she needs to sit/stand as needed; she can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance; never climb ladders, ropes, or scaffolds; frequently reach overhead with bilateral upper extremities; avoid concentrated exposure to extreme cold, wetness, vibration, fumes, odors, dust, gases, and poor ventilation; and avoid all exposure to hazards such as moving machinery and unprotected heights.

(Tr. at 23, Finding No. 5)

At step four, the ALJ found that through her DLI, the Plaintiff was capable of performing

her past relevant work as a secretary, timekeeper, and procurement clerk. (Tr. at 27, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability from March 12, 2020 through her DLI of June 30, 2022. (Tr. at 28, Finding No. 7)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff alleges that the ALJ erred by failing to include her mild mental limitations she determined at step two in her RFC assessment, or failed to explain why they were omitted. (ECF No. 5 at 2-4) Because the ALJ herself determined the Plaintiff had mild limitations in understanding, remembering, or applying information, in interacting with others, and in concentrating, persisting, or maintaining pace, but did not address whether this impacted her ability to return to semiskilled or skilled work, this error warrants remand, a result endorsed by numerous courts nationwide, including the Tenth Circuit in Wells v. Colvin, 727 F.3d 1061, 1068-1071 (10th Cir. 2013) (Id. at 4-12). Because of these errors, the Plaintiff asks the Court to reverse and remand for an outright award of benefits, or for further administrative proceedings. (Id. at 12)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the second step and subsequent steps of the sequential evaluation process, including how the medical opinion evidence supported that conclusion. (ECF No. 6 at 6-10) The Commissioner observes that there were no "proven" mental limitations accounted for in the RFC or their absence therefrom explained anywhere in the ALJ's decision, and the Fourth Circuit and courts within this Circuit, including this District, have routinely held that mild limitations in mental functioning do not necessarily preclude skilled work. (Id. at 11-13) The Commissioner argues substantial evidence supports the final decision, and this Court should

affirm the final decision. (Id. at 14)

In her reply, the Plaintiff reiterates her arguments that the ALJ never explained why she omitted the Plaintiff's mental functional limitations from the RFC or even how they did not prevent her from performing her prior work; the boilerplate following the psychiatric review technique does not provide any such explanation. (ECF No. 7 at 1-2) Because the Agency's own regulations mandate that an adjudicator explain their conclusions, the ALJ here could have easily explained why the Plaintiff's mild functional limitations from her non-severe mental impairments did not cause any work-related limitations, but she did not. (Id. at 2-5) The Plaintiff again asserts that the Wells decision conforms with Agency policy, otherwise, the Agency would have issued an Acquiescence Ruling – the lack of same underscores that remand is necessary. (Id. at 6) These errors require reversal and remand for an outright award of benefits, or for further administrative proceedings. (Id.)

**Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Treatment Records:

During the relevant period, the Plaintiff was treated for her mental health issues by her primary care provider, who prescribed Cymbalta in 2019 for major depressive disorder (*see, e.g.*, Tr. at 301). She was diagnosed with generalized anxiety disorder in late 2020 during a telehealth

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings, which only concerns the Plaintiff's mental impairments.

visit although there were no changes made to her medication (Tr. at 387). She continued with routine medication refills (no changes) throughout 2021 (*see, e.g.*, Tr. at 570).

In September 2021, the Plaintiff presented with restless psychomotor activity and had mild disorganized thought processes with dramatic attitude and distracted concentration on a mental status exam, otherwise, within normal limits (Tr. at 519-520). Buspar was added to her medication in November 2021, and by January 2022, she reported her anxiety and depression were controlled with her prescribed medication regimen (Tr. at 531, 641). She was not interested in any medication changes and was not sure if she needed counseling (Tr. at 640, 642). In February 2022, she tried psychotherapy, and her mental status exam was unremarkable (Tr. at 693, 695). She did not return to psychotherapy, but routine medication psychiatric follow-up visits throughout 2022 and early 2023 noted that she was doing well with improved depression and anxiety (Tr. at 699, 702, 732, 763, 1048). In January 2023, she was consistent and compliant with her medication, which she felt was effective, and she denied any complaints or concerns at all (Tr. at 1049).

Consultative Examinations:

On August 19, 2015, consultative examiner Kelly Robinson, M.A., noted that the Plaintiff had a normal mental status examination (Tr. at 287-288). Although her attention/concentration were "mildly" deficient, her social functioning, persistence, and pace were within normal limits (Tr. at 280). An April 2021 consultative examination with Kara Hughes, M.A., noted that the Plaintiff was prescribed medication by her primary care provider and was the only mental health treatment she had received (Tr. at 385). Her mental status examination was normal (Tr. at 386), specifically with a normal memory and pace, although a mildly impaired concentration and persistence (Tr. at 387).

Prior Administrative Findings:

State agency psychological consultants, James Binder, M.D., and Jeff Boggess, Ph.D., at the initial and reconsideration levels of determination, found the Plaintiff mildly limited in the four domains of the 'B' criteria of the listings (Tr. at 71, 83).

Plaintiff's Function Reports:

As part of her disability application, the Plaintiff reported problems with her memory, completing tasks, and concentration, but not with understanding or following directions (Tr. at 216). She said she does "okay" with stress and gets anxious with changes in routine (Tr. at 217).

**The Administrative Hearing:**

Plaintiff's Testimony:

The Plaintiff testified that she was no longer able to work due to incontinence, uncontrolled diabetes mellitus, and pain in her knees, shoulders, and neck (Tr. at 49). As a result of her physical impairments, she mentioned experiencing heart palpitations, nervousness, depression, and being frustrated and anxious over not being as independent as she was because her "body won't allow it." (Tr. at 52)

Vocational Expert's Testimony:

The vocational expert classified the Plaintiff's past relevant work as a secretary as skilled and sometimes sedentary or light work, and her other past relevant work as a timekeeper and procurement clerk as semi-skilled and sedentary work (Tr. at 57-58). In response to the hypothetical scenario with limitations as outlined in the RFC finding, *supra*, the vocational expert testified that the hypothetical individual would be able to perform the Plaintiff's past work as a timekeeper and procurement clerk actually and generally performed in the national economy, and

the secretary job as performed at the sedentary level of exertion (Tr. at 58-59).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

<u>Mental Limitations and the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work

11

setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. § 404.1546(c); see also Id. § 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

At the second step in the sequential evaluation process, the ALJ determined that the Plaintiff's mental impairments were non-severe, and that she only had a mild limitation[2] in all four broad areas of mental functioning. (Tr. at 20-21) In support of these findings, the ALJ relied on treatment records and the psychological consultative report from the relevant period, described *supra*, and further observed that the medical records showed that the Plaintiff's anxiety and depression were controlled with her prescribed medication regimen – while counseling was discussed, the Plaintiff indicated that she was unsure she would attend or not. (Tr. at 20, 529-533, 640-643) The ALJ also considered records beyond the Plaintiff's DLI, noting that she continued to do well with reports of improved depression and anxiety. (Tr. at 20-21, 693-698, 699-710, 729-735, 763-765, 1048-1053)

In the ALJ's discussion of the relevant evidence for the RFC determination, the ALJ noted that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent primarily as they concerned her physical impairments, but also observed that

---

[2] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."

"[a]lthough she tried counseling, she did not continue with this treatment because she reported her medications were working well and her mental status exam were largely normal." (Tr. at 26) The ALJ also noted that the agency psychological consultants both determined that the Plaintiff "was only mildly limited in all four domains of the 'B' criteria of the listings" (Tr. at 26, 63-79, 80-87)

The ALJ stated she "found the mild mental limitations persuasive, as supported by [the consultants'] notation that the claimant was treated for mental health issues by her primary care provider[.]" (Tr. at 26) Additionally, the ALJ noted that during the Plaintiff's consultative exam, she presented with normal or mildly impaired concentration, persistence, pace, recent memory, and social functioning, and that the Plaintiff reported doing light chores, driving, shopping via computer, managing her finances, taking care of her pets and occasionally running errands and visits. (Tr. at 26-27) The ALJ acknowledged that although the Plaintiff was found to have severe mental impairments at the initial level of review, it was determined they nevertheless caused only mild limitations in mental functioning, and by the reconsideration level, her mental impairments were deemed non-severe with the same mild limitations. (Tr. at 27) Again, the ALJ asserted the mild limitations were consistent with the Plaintiff's mental health treatment records, showing no recent changes in her medications, coupled with her mainly unremarkable mental status exams. (Id.) Further, the ALJ noted that throughout 2022 and 2023, the Plaintiff reported to her providers that her anxiety and depression were controlled by her prescription medication. (Tr. at 27, 495-517, 518-522, 529-533, 640-643, 693-698, 699-710, 729-735, 763-765, 1048-1053) The ALJ again referred to the findings provided by the psychological consultative examiner, finding them persuasive, noting that not only are they consistent with the overall mental health treatment records (Id.), but also the Plaintiff's "observed mood positive for symptoms of anxiety; fair insight; and

13

mildly impaired concentration and persistence based on exam findings and her ability to remain on tasks[]" further supported the mild limitations in mental functioning (Tr. at 27, 384-389).

Regarding the Plaintiff's argument that the ALJ "never addressed, let alone mentioned how these proven functional limitations were accommodated in the RFC" (see ECF No. 5 at 12), it is noted that this Circuit has also recognized " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]' " Reid v. Commissioner of Social Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2006) (*per curiam*)); see also Call v. Berryhill, Civil Action No. 2:17- CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018) ("The Court finds the ALJ's summaries and explanations sufficiently display a consideration of all the evidence, including that cited by Plaintiff. While this evidence was not explicitly mentioned, the holding in Reid applies to the instant case and a failure to specifically mention a single CR scan which noted `mild soft tissue swelling' in a transcript of well over 800 pages does not constitute `evidence to the contrary.' ") (Chambers, J.); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

In this case, it is clear that the ALJ considered the Plaintiff's mental functional limitations, but more importantly, this Court has on numerous occasions held that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that

14

mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

Ultimately, following her review of the medical and other evidence before her, the ALJ determined that "[b]ased on the foregoing, the undersigned finds the claimant *has the above residual functional capacity assessment*, which is supported by the record as a whole." (Tr. at 27) (*emphasis* added) This demonstrates that the ALJ considered the evidence related to the Plaintiff's mental impairments beyond step two of the sequential evaluation process, notwithstanding her "paragraph B" findings. In sum, the ALJ complied with her obligation under Section 404.1545(a)

15

and SSR 96-8p, as she not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations in the four broad functional areas, but she also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the ALJ's analysis of the Plaintiff's mental limitations and omitting same in the RFC assessment is supported by substantial evidence.

While the Plaintiff has asserted her disagreement with the ALJ's RFC determination, and urges this Court to adopt her view on this particular issue, that would amount to an impermissible re-weighing of the conflicting evidence of record: a court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The resulting RFC assessment concerning the Plaintiff's physical (and mental) impairments included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision. It is also clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** that the RFC assessment is supported by substantial evidence, and further **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for an award of benefits or remand (ECF No. 5), **GRANT** the Defendant's request to affirm the decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 2, 2024.

_____
Omar J. Aboulhosn
United States Magistrate Judge